UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DONALD JAMES CASELDINE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 3:14-cv-02339 |
| v. ) | Judge Trauger |
| ) | |
| NANCY BERRYHILL,[1] ) | |
| Acting Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Pending before the court is the plaintiff's Motion for Judgment on the Administrative Record (Docket Entry No. 12), to which the defendant Commissioner of Social Security ("Commissioner") filed a response (Docket Entry No. 16). Upon consideration of the parties' filings and the transcript of the administrative record (Docket Entry No. 10),[2] and for the reasons given herein, the court finds that the plaintiff's motion for judgment be DENIED and that the decision of the Commissioner be AFFIRMED.

## I. INTRODUCTION

The plaintiff, Donald James Caseldine, filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act on March 22, 2011, alleging disability onset as of May 14, 2010, due to "knee and leg pain, sleep apnea, shortness of breath, high blood pressure, diabetes, and obesity." (Tr. 12, 14, 93, 95, 153.) The plaintiff's claims were denied at the initial

---

[1]Nancy Berryhill became acting Commissioner for the Social Security Administration on January 23, 2017, and is therefore substituted as Defendant. *See* Fed. R. Civ. P. 25(d).

[2]Referenced hereinafter by page number(s) following the abbreviation "Tr."

level on July 5, 2011, and on reconsideration on September 8, 2011. (Tr. 93-98, 103-05.) The plaintiff subsequently requested *de novo* review of his case by an administrative law judge ("ALJ"). (Tr. 106-09.) The ALJ heard the case on April 1, 2013, when the plaintiff appeared with counsel and gave testimony. (Tr. 12, 25-51.) Testimony was also received by an impartial vocational expert. (Tr. 35, 46-49.) At the conclusion of the hearing, the matter was taken under advisement until June 7, 2013, when the ALJ issued a written decision finding the plaintiff not disabled. (Tr. 9-21.) That decision contains the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2. There is evidence of substantial gainful activity since May 14, 2010, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: Degenerative Joint Disease, knees; and Obesity (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1(20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry 50 pounds occasionally, sit for 4 hours, stand for 3 hours, and walk for 3 hours, with no more than occasional climbing. He is further limited to jobs that avoid concentrated exposure to hazards such as moving machinery and unprotected heights.

6. The claimant is capable of performing past relevant work as a Newspaper Delivery Supervisor. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from May 14, 2010, through the date of this decision (20 CFR 404.1520(f)).

(Tr. 14-20.)

On October 8, 2014, the Appeals Council denied the plaintiff's request for review of the ALJ's decision (Tr. 1-3), thereby rendering that decision the final decision of the Commissioner. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. § 405(g).

## II. REVIEW OF THE RECORD

The following summary of the medical record is taken from the ALJ's decision:

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

The essential elements of the claimant's testimony was as follows. With respect to his knee impairment, he experiences pain and swelling that he characterizes as constant and unrelenting. The pain level is 6 out of 10 on a normal day, where 10 represents the worst pain imaginable. He has a tendency to fall backward if his blood pressure is elevated. He questions whether he is able to enter or exit a shower or bathtub safely for fear of falling. His son lives with him and assists with his activities of daily living, such as household chores. He can sit for about 10 minutes, can be on his lower extremities for about 10-15 minutes, and can lift or carry under 10 pounds. He does not do laundry, because he is unable to go up or down the stairs where the laundry is located. He later testified that when he is done with his paper route, he can hardly get out of the car and enters his home in a very weakened state.

**Review of Medical Evidence.** In this instance, one of the claimant's main difficulties relates to the lack of objective medical evidence, especially of a treatment nature. The claimant explains that this is because he does not have health insurance. This explanation, however, is problematic. While it is recognized that a lack of insurance can conceivably reduce access to medical care, the claimant has not satisfactorily shown how his access has been eliminated altogether. Specifically, he has failed to show that he made any effort to ascertain whether medical services were available for persons of indigent means, such as the use of a county health department, or to seek care from such providers. Moreover, one does not find any events of an urgent or emergent nature, such as what would happen if his symptoms were bad enough to prompt a visit to an emergency room or urgent care center. Finally, the explanation is problematic for one other reason: Even the routine medical encounters with Dr. Lee were very sporadic for a time prior to alleged onset.

*See* Ex. 1-F at 2-3 (no encounters between July 2008- July 2009, with a third that was not until October 2010).

With this preface in mind, what follows is a brief summary of each of the medical exhibits. The undersigned shall describe the evidence mostly on an exhibit-by-exhibit basis, in an approximate chronological sequence.

Exhibit 1-F, from Robert H. Lee, M.D., includes treatment records between 2004 and October 12, 2010. During the period in question, the claimant was only seeing Dr. Lee on an annual basis. It shows that July of 2008, he had excellent diabetic control, with an Al c level of 6.1%, but he weighed 322 pounds and his blood pressure was improved but elevated (p. 3). In July of 2009, the claimant presented to obtain refills. On exam, the main concern was regarding the claimant's obesity, and Dr. Lee openly discussed bariatric surgery (p. 2). Finally, on October 12, 2010-now following alleged onset-the claimant presented for follow-up and to obtain refills. On exam, he was at 330 pounds but his blood pressure was within normal limits and the balance of the exam was unremarkable, but Dr. Lee urged the claimant to obtain a screening colonoscopy and to more regularly monitor his blood sugar levels (p. 1). Notwithstanding this, his Al c level was still at 6.3% (p. 11). At Exhibit 5-F, the claimant returns to Dr. Lee on June 22, 2012 (after two years), mainly for the purpose of obtaining limited refills on his prescriptions, and to obtain a medical source statement towards his disability claim. Dr. Lee declined to provide a statement, but ordered physical capacity testing. Objective findings were brief but did note the claimant was at 305 pounds. It was later revealed that the claimant's Al c level was at 7.1% (Ex. 7-F).

On June 16, 2011, the claimant presented to Stephen K. Goewey, M.D., for purposes of a physical consultative evaluation, and the same is outlined at Ex. 2-F. On this occasion, the claimant's allegations involved knee and leg pain, sleep apnea, hypertension, diabetes, obesity, and shortness of breath. His weight was measured at 286 pounds, which is a decrease in comparison with the claimant's last encounter with Dr. Lee in 2010. He was not noted to be short of breath during the examination, which included a range of motion that was unremarkable in all respects (including at the lungs), except for 100 degrees of flexion in the bilateral hips. There was a full range of motion in the bilateral knees, his gait and station had been unremarkable, and he was able to perform a 60% squat. Neurological findings were unremarkable as well. Dr. Goewey opined the claimant was capable of less than a full range of heavy work; could sit for 7 hours, stand for 5 hours, and walk for 4 hours; with the only other restrictions involving frequent operation of foot controls, frequent postural activities, and frequent exposure to temperature extremes and motor vehicle operation. We will return to this opinion later in the decision.

On August 23, 2012, the claimant presented to Fred K. Wood, a physical therapist, to obtain a physical capacity evaluation, the same being a referral from Dr. Lee (see Ex. 5-F). On this occasion, the claimant's primary complaint was for knee pain, with loss of balance, difficulty getting in or out of a shower or tub, and an inability to walk more than 200 feet or stand for more than 2-3 minutes before pain increases. He did, however, as part of his tests, lift 10, 25 and 51- pound weights from the floor to his waist and to carry each for 60 feet across a room; of these, extreme difficulty was reported only as to the 51-pound weight, while he reported increased subjective pain and joint popping as to the others. The claimant also reported difficulty in negotiating stairs without a handrail. The therapist opined as follows:

- Sit: 4 hours; Stand: 3 hours or less; Walk: 3 hours or less
- Sustained work activity: Under 4 hours
- Lift/carry: 50 pounds occasionally
- Occasional bending and crawling, no squatting or stooping, no more than occasional reaching above the shoulder level.
- Unspecified restrictions against unprotected heights or moving machinery

We will return to this opinion later in the decision as well.

The final medical encounter between the claimant and Dr. Lee, dated March 21, 2013, is found at Ex. 7-F. On this occasion, the claimant alleged worsening bilateral knee pain, and stated he is unable to walk more than 20 feet without sustaining great pain, together with a one-month history of very intermittent numbness at the left upper extremity. On exam-

> . . . weight 323. Height 5'6". Pulse 69 and regular. Respirations 20. Blood pressure 150/98. He is a morbidly obese 54-year-old who is in no acute distress. He is alert and oriented in all spheres. Normal affect and in no distress. ENT are normal. Neck is supple without bruits. Thyroid is not enlarged. Lungs are clear to auscultation. Heart, regular rhythm without murmurs. Abdomen is morbidly obese. No tenderness, masses, or organomegaly. Extremities do reveal a trace of edema. Examination of the knees, there is no crepitation. He does have full range of motion. No redness or swelling. Examination of his left arm, he does have a good peripheral pulse. . . . Sensation is intact.

It was Dr. Lee's view that the claimant needed to see an orthopedist, but he declined due to lack of insurance. He again declined a recommendation in favor of bariatric surgery for the same reason.

**Analysis.** Besides the observations as relating to the relative lack of medical evidence, it was the claimant's testimony that for the past year, he has been delivering newspapers to residences and a couple of stores. As previously mentioned above, the claimant stated that he would get up at 1:00 a.m., work his assigned route, and then come back about 5:30 a.m. to 6:00 a.m., even seven days a week. This is certainly indicative of the ability to work and to keep a schedule. At the hearing, the claimant asserted that he could sit for only 10 minutes, but this is clearly at variance with the nature of the claimant's work in delivering newspapers, seeing that he has to operate a motor vehicle. Indeed, it is implausible that the claimant would have to pull off the road every 10 minutes in order to stand. He also stated that he would have breakfast with his cousins every morning, but is no longer able to do this; he also stated that the last time he had this activity, he was only about four months ago. It is reasonable to infer that the claimant maintained his morning routine through most of the period in question, with the stoppage representing a much more recent development. There is not enough to show the claimant has developed any further limitations or restrictions.

Ultimately, there is little to go from, aside from the claimant's weight measurements (as to his obesity), together with objective findings from each of the evaluations in the file. With regard to the knee impairment in particular, there are no visual studies to review, but as Dr. Lee pointed out, there is no crepitus, either (Ex. 7-F). At the time of his consultative evaluation, he had a full range of motion in each knee, and neither knee was tender (Ex. 2-F). One finds nothing to signify that the physical therapist even attempted to measure the claimant's range of motion (Ex. 6-F). Given the above, and even accepting that the claimant has degenerative joint disease, it is impossible to ascertain the nature and extent of the degenerative changes. With regard to the claimant's obesity, the undersigned recognizes the impairment to be severe, but treatment records did not go terribly beyond weight measurements, except to say that Dr. Lee recommended bariatric surgery, and earlier, had called for the usual assortment of lifestyle changes, involving diet and exercise (*see, e.g.*, Ex. 1-F at 3).

**Evaluation of Opinion Evidence.** There were no treating source opinions from any of the claimant's physicians or from other clinicians.

In the pre-hearing brief of March 25, 2013, counsel argued for greater weight to be provided to the functional capacity evaluation report at Ex. 6-F over the consultative evaluation report of Dr. Goewey at Ex. 2-F, on the grounds that opinions in the latter report were not rendered by a treating physician (Ex. 7-E at 2). However, neither opinion is from a treating source, and in fact, only Dr. Goewey represents a medically acceptable source, as he is a physician. The physical therapist is not a medically acceptable source (*see* 20 CFR 404.1513).

In fact, the undersigned provided significant weight to both the examining physician and the physical therapist's reports, but only to the extent of their respective objective findings. To the extent the residual functional capacity departs from Dr. Goewey's conclusions, it was because the weight of the evidence supported a greater degree of restriction. On the other hand, to the extent it also departed from the therapist's conclusions, it was because it relied disproportionately upon the claimant's subjective complaints. The undersigned specifically gives little weight to the statement that the claimant is unable to work even four hours, as inconsistent with other abilities as outlined on the form and as it is a determination reserved for the Commissioner.

State agency medical consultants called for no exertional limitations, generally frequent postural activities, except for occasional climbing of ladders and similar objects (Ex. 3-F, 4-F). These will be provided with no weight, because the evidence does support a finding of a greater degree of limitation.

(Tr. 16-20.)

### III. CONCLUSIONS OF LAW

#### A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court are: (i) whether the decision of the Commissioner is supported by substantial evidence; and (ii) whether the Commissioner made any legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in context of Social Security cases); *Kyle v. Comm'r Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

Substantial evidence has been defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The Commissioner's

decision must be affirmed if it is supported by substantial evidence, "'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)). However, where an ALJ fails to follow agency rules and regulations, the decision lacks the support of substantial evidence, "even where the conclusion of the ALJ may be justified based upon the record." *Miller v. Comm'r of Soc. Sec.,* 811 F.3d 825, 833 (6th Cir. 2016) (citation and internal quotation marks omitted).

The Court must examine the entire record to determine if the Commissioner's findings are supported by substantial evidence. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and final determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g., Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

### B. Determining Disability at the Administrative Level

The claimant has the ultimate burden of establishing his entitlement to benefits by proving his "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The asserted impairment(s) must be demonstrated by medically acceptable clinical and laboratory

8

diagnostic techniques. *See* 42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(D); 20 CFR §§ 404.1512(a), (c), 404.1513(d). "Substantial gainful activity" not only includes previous work performed by the claimant, but also, considering the claimant's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which the claimant lives, or whether a specific job vacancy exists, or whether the claimant would be hired if he applied. 42 U.S.C. § 423(d)(2)(A).

In the proceedings before the Social Security Administration, the Commissioner must employ a five-step, sequential evaluation process in considering the issue of the claimant's alleged disability. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must show that he is not engaged in "substantial gainful activity" at the time disability benefits are sought. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007); 20 CFR §§ 404.1520(b), 416.920(b). Second, the claimant must show that he suffers from a severe impairment that meets the twelve month durational requirement. 20 CFR §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Edwards v. Comm'r of Soc. Sec.*, 113 F. App'x 83, 85 (6th Cir. 2004). Third, if the claimant has satisfied the first two steps, the claimant is presumed disabled without further inquiry, regardless of age, education or work experience, if the impairment at issue either appears on the regulatory list of impairments that are of sufficient severity as to prevent any gainful employment or equals a listed impairment. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 CFR §§ 404.1520(d), 416.920(d). A claimant is not required to show the existence of a listed impairment in order to be found disabled, but such a showing results in an automatic finding of disability that ends the inquiry. *See Combs, supra; Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

If the claimant's impairment does not render him presumptively disabled, the fourth step evaluates the claimant's residual functional capacity in relationship to his past relevant work. *Combs, supra*. "Residual functional capacity" ("RFC") is defined as "the most [the claimant] can still do despite [his] limitations." 20 CFR § 404.1545(a)(1). In determining a claimant's RFC, for purposes of the analysis required at steps four and five, the ALJ is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. §§ 423(d)(2)(B), (5)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir.1988). At the fourth step, the claimant has the burden of proving an inability to perform past relevant work or proving that a particular past job should not be considered relevant. *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474. If the claimant cannot satisfy the burden at the fourth step, disability benefits must be denied because the claimant is not disabled. *Combs, supra*.

If a claimant is not presumed disabled but shows that past relevant work cannot be performed, the burden of production shifts at step five to the Commissioner to show that the claimant, in light of the claimant's RFC, age, education, and work experience, can perform other substantial gainful employment and that such employment exists in significant numbers in the national economy. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)). *See also Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). In order to rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a claimant can perform. *Longworth*, 402 F.3d at 595. *See also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S. Ct. 2428, 77 L. Ed. 2d 1315 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the Commissioner of carrying his burden under

appropriate circumstances). Even if the claimant's impairments prevent the claimant from doing past relevant work, if other work exists in significant numbers in the national economy that the claimant can perform, the claimant is not disabled. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the five-step sequential evaluation process, the claim is not reviewed further. 20 CFR § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of a claim at step two of the evaluative process is appropriate in some circumstances).

### C. Plaintiff's Statement of Errors

Plaintiff argues that the ALJ erred (1) by failing to consider properly all of the plaintiff's impairments and by failing to provide sufficient reasons for not finding these impairments to be severe; (2) by failing to consider properly the plaintiff's severe impairment of obesity; and (3) by failing to include a function-by-function assessment in the RFC assessment as required by SSR 96-8p. (Docket Entry No. 12-1, at 1-2.) The plaintiff requests that this case be reversed and benefits awarded, or, alternatively, that this case be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration by a different ALJ. *Id*. at 8.

Sentence four of 42 U.S.C. § 405(g) states as follows:

The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

11

42 U.S.C. §§ 405(g), 1383(c)(3). "In cases where there is an adequate record, the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Additionally, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a claimant's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994). The plaintiff's statement of errors is addressed below.

**1. The ALJ erred by failing to consider properly all of the plaintiff's impairments and by failing to provide sufficient reasons for not finding these impairments to be severe impairments.**

The plaintiff argues that he was diagnosed with diabetes mellitus, hypertension, and obstructive sleep apnea, but that the ALJ failed to give sufficient reasons for not finding these impairments to be severe. (Docket Entry No. 12-1, at 5.)

At step two of the sequential evaluation process, a plaintiff bears the burden of showing that a medically determinable impairment is severe and meets the twelve month durational requirement of the Act. *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803 (6th Cir. 2012). A "severe impairment" is "any impairment or combination of impairments which significantly limits [the plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c).³ The Sixth Circuit has described the severity determination as "a *de minimis* hurdle in

---

³Basic work activities are "the abilities and aptitudes necessary to do most jobs," such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; [c]apacities for seeing, hearing, and speaking; [u]nderstanding, carrying out, and remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; and [d]ealing with changes in a routine work setting." 20 CFR § 404.1521(b).

the disability determination process," in which "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs*, 880 F.2d at 862. The goal of this test is to screen out groundless claims. *Id*. at 863. An ALJ's failure to find that another condition is a severe impairment cannot constitute reversible error where the ALJ finds that the claimant has at least one severe impairment and proceeds to complete the sequential evaluation process. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). Also, the fact that some of a claimant's diagnosed impairments may go unmentioned at the step two severity determination is "legally irrelevant." *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008).

The record reflects that the ALJ did not include "diabetes mellitus, hypertension, and obstructive sleep apnea" as severe impairments at step two. The ALJ explained:

> The undersigned recognizes that the claimant's hypertension and diabetes mellitus are both medically determinable; however, the weight of the evidence does not establish severity. Specifically, one finds no medical evidence to show any end-stage organ damage or any limiting effects from either impairment; moreover, the claimant testified that his diabetes is controllable if he watches what he does.
>
> The claimant also alleged sleep apnea as an additional medical condition (Ex. 1-E); however, there was no evidence that was specific to the impairment.

(Tr. 15.)

Here, the ALJ found that the plaintiff suffered from the following severe impairments: degenerative joint disease, knees, and obesity. (Tr. 15.) Because the ALJ specifically found that the plaintiff had at least one severe impairment and completed the sequential evaluation process, the ALJ's alleged failure to find the plaintiff's additional impairments to be "severe" cannot constitute grounds for reversal. *See Maziarz*, 837 F.2d at 244; *Gordon v. Colvin*, No. 3:15-00080, 2016 WL

13

3137728, at *12 (M.D. Tenn. June 6, 2016), *report and recommendation adopted*, No. 3:15-CV-00080, 2016 WL 3460233 (M.D. Tenn. June 24, 2016). Accordingly, the plaintiff's claim is without merit.

**2. The ALJ erred by failing to consider properly the plaintiff's severe impairment of obesity.**

The plaintiff asserts that the ALJ failed to comply with the requirements of SSR 02-1p for discussing how obesity affects the plaintiff's ability to work. The plaintiff asserts that although the ALJ found the plaintiff's obesity to be a severe impairment, the ALJ "failed to consider any resulting limitations from the plaintiff's obesity in the RFC." (Docket Entry No. 12-1, at 6.)

Social Security Ruling 02-1p describes how to consider a claimant's obesity in determining eligibility for Social Security benefits. SSR 02-1p provides, in part, that:

> An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. Individuals with obesity may have problems with the ability to sustain a function over time. . . . [O]ur RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting ona regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.

2002 WL 34686281, at *6 (S.S.A. Sept. 12, 2002).

Yet, "Social Security Ruling 02-01p does not mandate a particular mode of analysis. It only states that obesity, in combination with other impairments, 'may' increase the severity of the other limitations. It is a mischaracterization to suggest that Social Security Ruling 02-01p offers any particular procedural mode of analysis for obese disability claimants." *Bledsoe v. Barnhart*, 165 F. App'x 408, 411-12 (6th Cir. 2006). The Sixth Circuit has held that an "ALJ does not need to make specific mention of obesity if [the ALJ] credits an expert's report that considers obesity." *Id.* at 412. "A social security claimant bears the evidentiary burden of establishing that [his] obesity imposes

14

functional limitations." *Boles v. Colvin*, No. 2:12-CV-00079, 2015 WL 4506174, at *2 (M.D. Tenn. July 23, 2015) (citing *Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 667 (6th Cir. 2004)).

The ALJ listed obesity as one of the plaintiff's severe impairments. (Tr. 15.) The ALJ found that the plaintiff's obesity, considered singly and in combination with other impairments, did not meet or medically equal the criteria in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15-16.) The ALJ noted that Dr. Robert Lee discussed with the plaintiff about having bariatric surgery. (Tr. 17, 18.) The ALJ noted that the plaintiff's "treatment records did not go terribly beyond weight measurements , except to say that Dr. Lee recommended bariatric surgery, and earlier, had called for the usual assortment of lifestyle changes, involving diet and exercise." (Tr. 19, 212.) The ALJ also noted that according to Dr. Lee there was no crepitation in his knees and that at the time of the plaintiff's consultative evaluation the plaintiff had a full range of motion in each knee and neither knee was tender. (Tr. 19, 234, 258.)

The plaintiff does not cite any limitations imposed by any medical provider based upon his obesity, nor does he assert any specific limitations as a result of his obesity. "[I]t is the plaintiff's burden to prove the extent of his functional limitations resulting from obesity." *Allen v. Colvin*, No. 3:10-CV-01024, 2014 WL 1775564, at *21 (M.D. Tenn. Apr. 29, 2014) (citing *Her*, 203 F.3d at 391); *Smith v. Astrue*, 639 F. Supp. 2d 836, 847 (W.D. Mich. 2009) ("[The plaintiff] had the burden of showing specifically how the obesity, in combination with other impairments, limited her ability to a degree inconsistent with the ALJ's RFC determination."); *Lowe v. Colvin*, No. 2:12-0035, 2016 WL 1171024, at *6 (M.D. Tenn. Mar. 25, 2016), *report and recommendation adopted*, No. 2:12-0035, 2016 WL 1171023 (M.D. Tenn. Mar. 25, 2016) ("[A] threshold to any [obesity] analysis

is that the claimant must put forth evidence of the impact of obesity."). Accordingly, the court finds this claim is without merit.

**3. The ALJ erred by failing to include a function-by-function assessment in the RFC assessment as required by SSR 96-8p.**

The plaintiff contends that the ALJ violated SSR 96-8p by failing to include a function-by-function assessment as part of the RFC evaluation. (Docket Entry No. 12-1, at 7). The plaintiff generally argues that "the ALJ failed to include substantial limitations in the RFC finding correlating to symptoms and limitations which were well-documented in the record." *Id*.

SSR 96-8p provides that the "RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." 1996 WL 374184, at *3 (S.S.A. July 2, 1996). The RFC assessment must address an individual's exertional and nonexertional capacities. *Id*. at *5. Exertional capacity involves seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling, which must each be considered separately. *Id*. Nonexertional capacity involves "an individual's abilities to perform physical activities such as postural (e.g., stooping, climbing), manipulative (e.g., reaching, handling), visual (seeing), communicative (hearing, speaking), and mental (e.g., understanding and remembering instructions and responding appropriately to supervision)," as well as, "it also considers the ability to tolerate various environmental factors (e.g., tolerance of temperature extremes)." *Id*. at *6. "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id*. at *7. In assessing the RFC, the ALJ "must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and

16

continuing basis" and "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id*.

The Sixth Circuit has stated that while "SSR 96-8p requires a 'function-by-function evaluation' to determine a claimant's RFC, case law does not require the ALJ to discuss those capacities for which no limitation is alleged." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002) (citing *Bencivengo v. Comm'r of Soc. Sec.*, 251 F.3d 153 (table), No. 00-1995 (3d Cir. Dec. 19, 2000)). Further, "'[a]lthough a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing,'" as there is a difference "between what an ALJ must consider and what an ALJ must discuss in a written opinion." *Id*. at 547-48 (internal citation omitted). "Significantly, SSR 96-8p states that the ALJ must consider each function separately; it does not state that the ALJ must discuss each function separately in the narrative of the decision." *Hernandez v. Colvin*, No. 3:14-CV-01916, 2016 WL 699200, at *14 (M.D. Tenn. Feb. 2, 2016), *report and recommendation adopted*, No. 3-14-1916, 2016 WL 695143 (M.D. Tenn. Feb. 22, 2016); *Beason v. Comm'r of Soc. Sec.*, No. 1:13-CV-192, 2014 WL 4063380, at *13 (E.D. Tenn. Aug. 15, 2014) ("SSR 96-8p clearly states that the ALJ must consider each function separately; it does not state that the ALJ must discuss each function separately in the narrative of the ALJ's decision."). In specifying a claimant's exertional and nonexertional limitations, "'the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.'" *Delgado*, 30 F. App'x at 548 (citation omitted); *Picklesimer v. Colvin*, No. 3:13-1457, 2015 WL 5944389, at *12 (M.D. Tenn. Oct. 13, 2015), *report and recommendation adopted*, No. 3-13-1457, 2015 WL 6690096 (M.D. Tenn. Nov. 2, 2015).

After considering the entire record, the ALJ determined the following:

> [T]he claimant has the residual functional capacity to lift and carry 50 pounds occasionally, sit for 4 hours, stand for 3 hours, and walk for 3 hours, with no more than occasional climbing. He is further limited to jobs that avoid concentrated exposure to hazards such as moving machinery and unprotected heights.

(Tr. 16.)

The ALJ provided a detailed RFC analysis. (Tr. 16-20.) The ALJ discussed the plaintiff's alleged limitations, as well as his treatment history, the plaintiff's testimony, and the medical opinions in the record. *Id.* The court's review shows that the ALJ properly considered all of the relevant evidence and sufficiently explained her decision. The plaintiff does not identify the specific limitations that he contends that the ALJ failed to include. The plaintiff does not cite any medical records in support, nor does he reference any specific symptoms overlooked by the ALJ. Accordingly, based upon the record, the Court concludes that the ALJ's RFC analysis was proper and there is no merit to t his claim.

## IV. CONCLUSION

For all of the above reasons, the plaintiff's motion for judgment on the administrative record (Docket Entry No. 12) is **DENIED**. An appropriate Order will accompany this memorandum.

_____
ALETA A. TRAUGER
United States District Judge